[Cite as *Rimmer v. CitiFinancial, Inc.*, 2020-Ohio-99.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

KAREN RIMMER, INDIVIDUALLY : AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, :

    Plaintiffs-Appellants, :

                             No. 108081

v. :

CITIFINANCIAL, INC., :

    Defendant-Appellee. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 16, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-05-564493

---

### *Appearances:*

Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti; Brian Ruschel, *for appellants*.

Thompson Hine, L.L.P., Kip T. Bollin, and Mark R. Butscha, Jr., *for appellee*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} This case concerns several issues involving the class definition and identification of class members in a class action. This is the seventh appeal by Karen

Rimmer in the class action she initiated 15 years ago in 2005. In 2000, Rimmer executed a note and security agreement with Bank of Yorba Linda for $5,000. Her loan was subsequently assigned to Associates Financial Services, Inc., which then merged with CitiFinancial Inc. ("Citi"), and Citi became the holder of Rimmer's mortgage. On April 10, 2001, Rimmer paid off her loan in full.

{¶ 2} R.C. 5301.36 requires a bank to file an entry of satisfaction of mortgage with the county recorder within 90 days of full payment of the mortgage. Citi, however, did not file the entry of Rimmer's full payment of her mortgage until August 16, 2001, past the statutory time of 90 days.

{¶ 3} Four years later, in 2005, Rimmer filed a class action complaint against Citi, alleging Citi failed to file an entry of satisfaction of mortgage with the county recorder within 90 days of full payment of the mortgage, in violation of R.C. 5301.36. Rimmer sought automatic damages ($250), interest, and costs as allowed under R.C. 5301.36(C).

{¶ 4} Throughout 2005 and 2006, the parties engaged in extensive discovery, including written discovery, document productions, and depositions. Rimmer served more than six dozen requests for production of documents.

{¶ 5} On January 25, 2006, Rimmer filed a motion for class certification seeking to represent a class of individuals who paid off their mortgages in full but for whom Citi failed to timely file an entry of satisfaction of those mortgage with the county recorder. On March 13, 2006, Citi filed an opposition to class certification. Citi raised the issue of arbitration provisions contained in the majority of the loan

agreements. It represented to the trial court that its records showed that out of 98,206 loans that were paid off during the relevant period (March 8, 1999, to December 31, 2005), all but 5,254 were subject to an arbitration agreement. Citi submitted affidavits with attached business records identifying the loans subject to arbitration agreements.

{¶ 6} Citi produced, for the inspection of Rimmer's counsel, spreadsheets that identified loans that were satisfied during the pertinent period but were not released within 90 days. On June 29, 2006, Rimmer's counsel reviewed the documents produced. In addition to the spreadsheets, Citi also identified witnesses available for deposition regarding these loans.

{¶ 7} Rimmer moved the court to strike Citi's claim regarding the arbitration agreement. The trial court denied the motion. Rimmer then moved for partial summary judgment as to her individual claim against Citi. Citi filed its cross-motion for summary judgment, alleging that it mailed the entry of satisfaction within the statutory time but the recorder failed to timely process the entry. The trial court granted summary judgment in favor of Rimmer on her individual claim. The trial court, however, denied her motion for class certification without providing an analysis.

### Rimmer I

{¶ 8} Rimmer appealed the trial court's denial of class certification. This court affirmed the summary judgment in favor of Rimmer on her individual claim,

rejecting Citi's claim that it timely processed Rimmer's release and was entitled to a presumption of timely delivery.

{¶ 9} This court, however, reversed the trial court's decision denying class certification. *Rimmer v. Citifinancial*, 8th Dist. Cuyahoga No. 89407, 2008-Ohio-1814 ("*Rimmer I*"). This court determined that Rimmer met all seven requirements for class certification under Civ.R. 23:[1] she has defined an identifiable and manageable class; a question of law common to all members of the class predominates over any individual legal issues that may arise; and a single adjudication as a class action is the most efficient and fair manner by which to resolve the matter. *Rimmer I* at ¶ 30. Regarding the arbitration agreement in many mortgagors' mortgage agreements, this court determined that the existence of the arbitration agreement would not defeat the class certification. [2] *Id.* at ¶ 27.

---

[1] The seven findings required for class certifications are:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is impracticable (numerosity); (4) there must be questions of law or fact common to the class (commonality); (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); (6) the representative parties must fairly and adequately protect the interests of the class (adequacy); and (7) questions of law or fact common to the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

*Rimmer I* at ¶ 23, citing *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 79-80, 1998-Ohio-365, 694 N.E.2d 442.

[2] Regarding the arbitration agreement contained in many potential class members' loan agreement, this court stated:

**{¶ 10}** Citi appealed this court's decision to the Supreme Court of Ohio. That court accepted the case for review but held the case for its decision in *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286. The Supreme Court of Ohio subsequently released *Alexander*, holding that arbitration agreements in loan documents apply to claims for late recording of mortgage satisfactions. After *Alexander* was released, the Supreme Court of Ohio remanded the case to this court for further consideration of the case in light of *Alexander*. *Rimmer v. CitiFinancial, Inc.*, 123 Ohio St.3d 128, 2009-Ohio-4902, 914 N.E.2d 406. Upon the remand from the Supreme Court of Ohio, this court in turn remanded the case to the trial court to apply *Alexander* and to decide whether to certify a class in light of *Alexander.*

### The Trial Court Certified the Class in 2013

---

As to the fourth and seventh requirements of Civ.R. 23 — that there be questions of law or fact common to the class and that such questions predominate over individualized legal issues — there is but one question of law that clearly predominates in this case. Specifically, whether Citi violated its duty to record a satisfaction of mortgage within 90 days from the date of payoff. Even for the contracts that, unlike Rimmer's loan agreement, contain an arbitration clause, the law regarding when to record the satisfaction is unambiguous. Although there may be some different defenses and issues presented with regard to those members, they are "subordinate to the far larger common defense that [Citi] asserts against the Complaint." *See Finnan v. L.F. Rothschild & Co., Inc.* (S.D.N.Y. 1989), 726 F.Supp. 460, 465. The fact that some members may be subject to arbitration does not compel a finding that individual issues predominate over common ones since there is still a sufficient nucleus of common issues.

*Rimmer I* at ¶ 27.

{¶ 11} Three and one-half years after this court remanded the case, on March 11, 2013, the trial court certified the class, excluding from the class those who had an arbitration agreement in their loan agreements. The trial court defined the class as:

> All persons who from March 8, 1999 *entered into* a residential mortgage agreement (as defined by R.C. 5301.36) with Citifinancial, Inc. *without entering into an arbitration provision* agreement with Citifinancial, Inc. relating to disputes arising out of said mortgage agreement, and thereafter satisfied their obligation where Citifinancial, Inc. (or any predecessor or other entity acquired or merged with, or otherwise now part of Citifinancial, Inc., including any affiliates, subsidiaries, and/or related lending institutions) was the mortgagee at the time of satisfaction, and, for each such satisfied mortgage, Citifinancial, Inc. did not record the fact of the satisfaction in the appropriate county recorder's office and pay fees required for the recording within 90 days from the date of satisfaction.

(Emphasis added.)

### *Rimmer II*

{¶ 12} Rimmer appealed the trial court's class definition. Although the class as defined by the trial court limited its members to those who *entered into* a mortgage and paid off the loan from March 8, 1999 and thereafter, Rimmer did not challenge this aspect of the class definition. Instead, she raised three other issues regarding the class definition. First, she argued *Alexander* did not require the trial court to exclude individuals who had an arbitration agreement from the class. This court disagreed, finding the trial court properly applied *Alexander* in excluding from the class individuals whose loan agreements contained an arbitration agreement.

*Rimmer v. Citifinancial, Inc.*, 2013-Ohio-5732, 6 N.E.3d 621, ¶ 32 (8th Dist.) ("*Rimmer II*").

**{¶ 13}** Second, Rimmer argued that a subgroup of mortgagors whose arbitration agreements lacked a certain sentence should not be excluded from the case.[3] This court rejected the claim as well.

**{¶ 14}** Third, Rimmer argued the trial court's definition improperly excluded those individuals who entered into loan agreements with Citi's predecessors or other entities that were acquired by or merged with Citi. This court agreed and remanded the matter to the trial court for a revision of the class definition to properly include these individuals.[4]

------------

[3] Some mortgagors' loan agreements contained an arbitration agreement that stated:

> Claims Excluded from Arbitration[:] * * * Any matter where all parties seek monetary damages in the aggregate of $15,000 or less in total damages (compensatory and punitive), costs, and fees. * * * *Any claim asserted on behalf of a putative class of persons will, for purposes of this exclusion, be deemed to exceed $15,000.*

(Emphasis added.)

The arbitration agreements in other loan agreements did not contain the italicized sentence. Rimmer argued the additional sentence was significant. She labelled provisions containing this sentence "Type B" arbitration clause and those without it "Type A" arbitration clause. She acknowledged that individuals with a "Type B" clause should not be included in the class, but argued that those with a "Type A" arbitration clause should be included in the class. *Rimmer II* at ¶ 33-34.

[4] Citi cross-appealed the trial court's decision, claiming the trial court erred by placing the burden on Citi to provide notice to the class. Citi also claimed the trial court failed to address which party was responsible for identifying the members of the class. This court, citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 356, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), explained that while it is generally the representative plaintiff who

{¶ 15} On remand from *Rimmer II*, the trial court issued a decision on March 19, 2014, revising the class definition as follows:

> All persons who from March 8, 1999 entered into a residential mortgage agreement (as defined by R.C. 5301.36) with Citifinancial, Inc. without entering into an arbitration provision agreement with Citifinancial, Inc. relating to disputes arising out of said mortgage agreement, and thereafter satisfied their obligation where Citifinancial, Inc. (or any predecessor or other entity acquired or merged with, or otherwise now part of Citifinancial, Inc., including any affiliates, subsidiaries, and/or related lending institutions) was the mortgagee at the time of satisfaction, and, for each such satisfied mortgage, Citifinancial, Inc. did not record the fact of the satisfaction in the appropriate county recorder's office and pay fees required for the recording within 90 days from the date of satisfaction.

## *Rimmer III*

{¶ 16} The class definition, as stated by the trial court in its March 19, 2014 decision, again failed to include individuals who entered into a mortgage agreement with Citi's predecessors or other entities that were acquired or merged with Citi. Rimmer appealed from the decision; in her sole assignment of error, she argued the trial court did not follow this court's mandate in *Rimmer II* to include those individuals in the class. This court agreed and remanded the matter for the trial court to correct the class definition as follows:

> All persons who from March 8, 1999 entered into a residential mortgage agreement (as defined by R.C. 5301.36) with Citifinancial, Inc. (or any predecessor or other entity acquired or merged with, or otherwise now part of Citifinancial, Inc., including any affiliates, subsidiaries, and/or related lending institutions) without entering into an arbitration provision agreement with Citifinancial, Inc.

should perform the task of sending the class notice, in some instances, the defendant may be able to perform the task with less difficulty or expense; in these cases, the trial court may exercise its discretion to order the defendant to perform the task. *Rimmer II* at ¶ 51.

> relating to disputes arising out of said mortgage agreement, and thereafter satisfied their obligation where Citifinancial, Inc. (or any predecessor or other entity acquired or merged with, or otherwise now part of Citifinancial, Inc., including any affiliates, subsidiaries, and/or related lending institutions) was the mortgagee at the time of satisfaction, and, for each such satisfied mortgage, Citifinancial, Inc. did not record the fact of the satisfaction in the appropriate county recorder's office and pay fees required for the recording within 90 days from the date of satisfaction.

*Rimmer v. Citifinancial, Inc.*, 8th Dist. Cuyahoga No. 101254, 2014-Ohio-5287, ¶ 10 ("*Rimmer III*").

### Procedural History Post *Rimmer III*

{¶ 17} On remand from *Rimmer III*, the trial court defined the class as instructed by this court in an order dated January 21, 2015. Thereafter, on March 11, 2015, the trial court issued a judgment entry ordering that class notice be sent "only to the individuals who did not enter into arbitration agreements with Citifinancial, Inc., or with any predecessors or other entities acquired or merged with, or otherwise now part of Citifinancial, Inc., including any affiliates, subsidiaries, and/or related lending institutions." Rimmer appealed from this judgment entry (8th Dist. Cuyahoga No. 102845), claiming the trial court changed the class definition. She argued the only individuals to be excluded from the class were those who had an arbitration agreement with Citi, and those who had an arbitration agreement with predecessors of Citi or other entities acquired or merged with Citi should not be excluded from the class. This court dismissed the appeal because the March 11, 2015 order, which dealt with class notice, was not a final

appealable order. The issue argued by Rimmer in Appeal No. 102845 is not raised in the instant appeal.

### a. Rimmer Sought to Modify the Class Definition

{¶ 18} On June 11, 2015, Rimmer moved the trial court to modify the class definition. *For the first time*, after three appeals, Rimmer argued that the first sentence of the trial court's class definition ("All persons who from March 8, 1999 *entered into* a residential mortgage agreement * * *") should be modified to read as follows: "All persons who, from March 8, 1999 and thereafter *paid off* a residential mortgage * * *." Rimmer pointed to the data provided by Citi that showed that from March 8, 2013, through December 31, 2005, a total of 98,206 loans were *paid off* (and all but 5,254 of these loans contained an arbitration agreement). Based on the data provided, Rimmer argued Citi itself had also understood the class members to be those who *paid off* their loans rather than those who *entered into* the loan agreement during the pertinent time period.

{¶ 19} On August 10, 2015, the trial court denied Rimmer's motion to modify the class definition on the ground that the class as defined in *Rimmer III* was the law of the case.

### b. Citi Identified 275 Members Fitting the Class Definition

{¶ 20} Subsequently, Rimmer asked the trial court to order Citi to identify the class members. While Citi opposed Rimmer's request, the trial court ordered Citi to identify and provide notice to the class members. Out of 5,254 loans without the arbitration agreement that were *paid off* during the class period, only 2,814 were

*entered into* during the class period. Citi provided a spreadsheet of 2,814 accounts to a title company, which then searched the records of the county recorders throughout the state to identify the late filings among the 2,814 potential class members. Among the 2,814 potential class members, most of the mortgage satisfactions were filed timely within the 90-day period statutory period. In addition, for more than 200 accounts, the title company did not find a mortgage recorded, rendering the issue of mortgage satisfaction filing moot. At the end, the title company identified 275 class members fitting the class definition set forth in *Rimmer III.* On April 14, 2016, Citi presented the results of the title company's search, consisting of a spreadsheet with 275 accounts, to Rimmer and the trial court.

### c. Rimmer Sought to Reopen Discovery Regarding Arbitration Agreements

{¶ 21} After the identification of 275 class members, on May 31, 2016, Rimmer filed a motion to reopen discovery. For the first time since 2006, Rimmer asked Citi to produce a *separately signed* arbitration agreement for proof of a mortgagor's agreement to arbitration. The trial court denied Rimmer's motion, emphasizing that Rimmer's request for additional discovery was made 11 years after her complaint was filed and, during the 11 years this case remained pending, defendant Citi had complied with all prior discovery requests and made relevant mortgagor files available for inspection.

{¶ 22} On October 12, 2016, with the court's approval, Citi mailed the class notice to the 275 class members.

### d. Rimmer's Motion to Expand the Class Notice

{¶ 23} More than two months after the class notice was mailed to the 275 class members, on December 29, 2016, Rimmer filed a motion to expand the class notice. Rimmer claimed Citi must produce *separately signed* arbitration agreements to justify the exclusion of those whose loan agreements contained an arbitration agreement. She argued that the class notice should be sent to any individuals whose loan agreements contained an arbitration agreement unless Citi could produce signed arbitration agreements to justify the exclusions. Attached to Rimmer's motion were affidavits from five individuals, who averred that they had no record or recollection of separately signing an arbitration agreement. On January 18, 2017, the trial court denied Rimmer's motion to expand the class notice.

### e. Judgment Regarding Citi's Liability

{¶ 24} Subsequently, on May 25, 2017, Citi submitted a stipulated judgment, which conceded Citi's liability to each class member of $250 in statutory damage, for a total liability of $68,750. On June 15, 2017, the trial court issued a judgment entry that stated Citi has stipulated to its liability to the 275 class members and, based on the stipulation, the court determined Citi was liable for the statutory damage of $250 to each of the 275 class members for a total judgment of $68,750. The court ordered Citi to notify the class members of the judgment within 30 days and stated it would make an award of attorney fees after the class members had an opportunity to object to the judgment.

### f. Motions to Intervene

{¶ 25} Before the class members were notified, on July 12, 2017, Rimmer appealed from the court's June 15, 2017 judgment entry (8th Dist. Cuyahoga No. 105989). On August 23, 2017, this court dismissed the appeal due to a lack of a final appealable order. This court noted that the trial court gave the class members 30 days to object to the judgment and, furthermore, the attorney fees issue was still pending.

{¶ 26} While Appeal No. 105989 was pending, on July 5, 2017, the four individuals who had previously submitted an affidavit alleging they had no record or recollection of separately signing an arbitration agreement filed identical motions to intervene in the class action. The trial court denied their motions.

### Rimmer IV

{¶ 27} These four individuals appealed from the trial court's decision denying their motions to intervene. This court affirmed the trial court's judgment. This court noted that the class definition was certified on January 21, 2015, and the class notice was sent to the class members on October 12, 2016, yet the motions to intervene were not filed until July 5, 2017, three weeks after the final judgment of $68,750 was entered against Citi and almost seven months after the trial court denied Rimmer's motion to expand the class notice to include individuals in appellants' situation. This court concluded appellants' late intervention would have caused significant costs and considerable delay in the proceedings between the existing parties. *Rimmer v. Citifinancial, Inc.*, 2018-Ohio-2845, 117 N.E.3d 862, ¶

29 (8th Dist.) ("*Rimmer IV*").  This court also characterized the late interventions as possibly merely an attempt to relitigate the discovery issues.

{¶ 28} On December 11, 2018, the trial court entered a judgment of $68,750 in favor of the class and awarded $27,500 in attorney fees, to be subtracted from the total judgment amount of $68,750.  The instant appeal follows.

## This Appeal

{¶ 29} In this appeal, Rimmer raises seven assignments of error for our review:

I. The trial court erred in entering its June 15, 2017 and December 11, 2018 money judgments based on no motion, evidence, hearing, or trial — solely on statements of CitiFinancial's attorneys in their briefing.

II. The trial court erred in excluding numerous persons from the class and from recovery, based solely on CitiFinancial arguing that excluded persons "should have" signed arbitration agreements — when CitiFinancial's answer filed July 12, 2005 (never amended) did not mention arbitration (even as an affirmative offense); there was no signed (or even written) arbitration agreement in the record for any of these persons; CitiFinancial stopped using arbitration agreements August 1, 2005; and there is no evidence that anyone (including Citi) ever requested or will request arbitration of this matter or there is even any "dispute" that anyone (including Citi) wants "arbitrated."

III. The trial court erred in failing to hold any hearing, trial, or any other evidentiary proceeding to determine who was entitled to class membership, notice, and relief, including for the four [o]bjectors who each stated, "I request a hearing on the record on this objection and any reasons why I am being excluded recovery in this action."

IV. When the issue of whether and what persons, if any, had signed arbitration agreements became relevant, the trial court erred and abused its discretion in denying Rimmer's requests for discovery

about CitiFinancial's purported "identification" and exclusion of numerous class members based on purposed signed arbitration agreements, when no signed Ohio agreement was ever submitted to the trial court.

V. The presumption under Ohio law is against arbitration where there is a dispute whether the person entered into an arbitration agreement. The trial court therefore erred in excluding persons without introduction of their signed agreement with Citifinancial, Inc. to arbitrate.

VI. The trial court erred in ordering class notice to only 275 people and excluding notice to numerous others for whom Citi had excluded while introducing no signed agreement to arbitrate.

VII. The trial court erred in overruling Rimmer's motion for the trial court to correct a plain, clerical error in the class definition so that the class membership was correctly based on when the subject mortgages were paid off, and not when they were entered into.

{¶ 30} At the outset, we are mindful that the trial court's determination in class action matters are reviewed for an abuse of discretion. "The appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Washington v. Spitzer Mgt.*, 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, ¶ 9, citing *Hamilton*, 82 Ohio St.3d at 70, 694 N.E.2d 442. "A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. It is at the trial level that decisions as to class definition and the scope of questions to be treated as class issues should be made." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

{¶ 31} Before we address Rimmer's claims in this appeal, we observe first that our review of the extensive record in this case reflects that this class action litigation appears to have been litigated over the years in almost a piecemeal fashion. Rimmer's claims regarding the class and class members appear to "evolve" during the 14-year history of this class action. After this court decided in *Rimmer I* that the trial court should have granted Rimmer's motion for class certification and the trial court subsequently certified the class in accordance with *Alexander,* 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286 (holding arbitration agreements in loan agreements apply to mortgage satisfactions claims), Rimmer argued in *Rimmer II* that (1) *Alexander* did not require the exclusion of those with an arbitration agreement in this case, (2) a certain group of mortgagors whose arbitration agreement lacked a certain sentence should not be excluded from the case, and (3) the trial court's class definition improperly excluded those who had entered into loan agreements with Citi's predecessors or entities that were acquired by or merged with Citi.

{¶ 32} Following *Rimmer III*, where this court set forth the class definition and instructed the trial court to adopt the definition, Rimmer for the first time sought to revise the phrase "entered into a residential mortgage agreement" in the first sentence of the class definition even though the same phrase was in the class definition since March 2013, when the trial court first defined the class. After Citi identified the class members as ordered by the trial court and narrowed the class to 275 members fitting the class definition, Rimmer sought to reopen discovery,

claiming for the first time that Citi must produce separately signed arbitration agreement for proof of an agreement for arbitration. Rimmer raised this claim ten years after the issue of arbitration agreement was raised, as the trial court emphasized. Following the trial court's denial of the belated discovery request, Rimmer apparently attempted to relitigate the discovery issue through several intervenors, as this court observed in *Rimmer IV*.

{¶ 33} The class definition was settled by this court in *Rimmer III*, and Citi subsequently stipulated to its liability to the 275 members fitting the class definition. The latest round of litigation — the main issue in this appeal — concerned Rimmer's claim, raised for the first time in May 2016, when she requested discovery be reopened, claiming that Citi must produce evidence of separately signed arbitration agreements in order to support the exclusion of those whose loan agreements contained an arbitration agreement. The first six assignments in this appeal, although separately argued, relate to this issue. Rimmer argues the trial court abused its discretion in not reopening discovery to require Citi to produce evidence of signed arbitration agreements; the class action notice should be sent to all but those whose signed arbitration agreement was produced by Citi; and the trial court erred in not holding a hearing before entering a judgment finding Citi's liability in the amount of $68,750. Because the arguments in these six assignments of error are intertwined, we address them together.

## Whether Citi Must Produce Separately Signed Arbitration Agreements to Support Exclusions from the Class

{¶ 34} Rimmer claims the arbitration agreements contained in the mortgage agreements are not valid and do not warrant an exclusion from the class unless Citi produced a separately signed arbitration agreement. While a claim regarding the enforceability of the arbitration agreement could potentially be raised by those individuals subject to an arbitration agreement in their own actions against Citi, the instant class action concerned the class of mortgagors who did *not* have an arbitration agreement in their mortgage agreements, as set forth in the class definition. Thus, whether Citi must prove the validity of an agreement to arbitrate by producing a separately signed arbitration agreement is not pertinent for *this* certified class. Conceivably, Rimmer could have proposed a class definition to incorporate the requirement that individuals with an arbitration agreement in their mortgage agreement can only be excluded from the class by a proof of a separately signed arbitration agreement. However, the class as defined does not incorporate this evidentiary requirement. In addition, the trial court concluded Citi complied with prior discovery requests and previously made relevant mortgagor files available for inspection. Therefore, Rimmer's claim that Citi must produce evidence of a separately signed arbitration agreement in order to exclude the mortgagors whose mortgage agreements contained an arbitration agreement lacks merit.

{¶ 35} A related issue is Rimmer's claim that the trial court erred in denying her request in 2016 for additional discovery seeking the production of signed

arbitration agreements. It is well settled that a trial court has broad discretion in controlling the discovery process. *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 295 N.E.2d 659 (1973); *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). The trial court abuses its discretion in discovery matters if it acts in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 31.

{¶ 36} Rimmer engaged in extensive discovery in 2005 and 2006. In response to her discovery requests, Citi had made the loan documents available for inspections and copying. Rimmer knew since March 2006 that, pursuant to Citi's research of their business records, all but 5,254 loan agreements contained an arbitration agreement. Thereafter, on June 29, 2006, her counsel reviewed the loan documents produced by Citi. As the trial court noted, Rimmer never complained that Citi's response to her discovery request was inadequate until a decade later, in 2016, when she asked the trial court to reopen discovery, claiming for the first time that Citi must produce separately signed arbitration agreements in order to prove those mortgagors agreed to arbitration. In denying Rimmer's motion to reopen discovery, the trial court noted that Citi had complied with all prior discovery requests and Rimmer's counsel had had ample opportunity to request documents and review the files made available regarding the arbitration agreement. The trial court's decision denying Rimmer's belated request to reopen discovery concerning the arbitration agreement was not unreasonable, arbitrary, or unconscionable.

{¶ 37} Rimmer also claims that the trial court should have held a hearing before entering the final judgment regarding Citi's liability. As Citi admitted liability to the class members, the only dispute remaining was who the class members were. Rimmer did not seem to dispute that, among the 5,254 mortgagors whose mortgage agreements contained an arbitration agreement, only 275 individuals fit the class definition. What she disputed was the exclusion of mortgagors whose mortgage agreement contained an arbitration agreement but no separately signed arbitration agreement was produced by Citi. As discussed above, we find the claim to be without merit. In any event, Rimmer never requested a hearing regarding the identification of the members under the class definition. The only request for a hearing was made by the four individuals whose mortgage agreements contained an arbitration agreement, and this court in *Rimmer IV* held the trial court properly denied their motions to intervene. Rimmer never asserted before the trial court that a hearing was required for the identification of the class members.[5] Because she did not raise

---

[5] In Rimmer's reply brief at p. 4, she questions the data presented by Citi showing that out of more than 98,000 loans, all but about 5,200 had arbitration agreements. The record reflects that, as early as March 13, 2006, Citi represented to the trial court that the result of the examination of the computer records by two Citi employees (Miguel Lopez and Esteves Wild) showed all but 5,254 loans were subject to an arbitration agreement. In addition, a third employee, Lani Dodson, stated in her affidavit that, effective May 4, 1998, all loans originated by Associates (one of Citi's predecessors in interest) in Ohio contained arbitration provisions and all borrowers were required to sign a separate arbitration agreement in conjunction with the loan agreement. In *Rimmer II*, this court stated that Citi's records showed that during the relevant period, all but 5,254 loan agreements contained an arbitration agreement. *Rimmer II* at ¶ 15. Despite her awareness since 2006 that Citi's research of its records showed all but 5,245 loan agreements were subject to an arbitration agreement, Rimmer never requested an evidentiary hearing on this issue.

the issue before the trial court, we reject this argument raised for the first time on appeal. A party who fails to raise an issue in the trial court waives the right to raise it on appeal. *Harding Pointe, Inc. v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4885, 1 N.E. 3d 804, ¶ 43 (10th Dist.).

{¶ 38} Finally, under the second assignment of error, Rimmer claims, for the first time, that because arbitration is an affirmative defense and Citi did not mention arbitration in its answer, it therefore cannot raise the arbitration agreement as a basis for excluding individuals whose loan agreements contained an arbitration agreement.

{¶ 39} In *Gembarski v. PartsSource, Inc.*, Slip Opinion No. 2019-Ohio-3231, the Supreme Court of Ohio addressed the question of when the defense of arbitration should be raised by the class action defendant to avoid a waiver of that defense. The court determined that, when a case originates with a single named plaintiff and that plaintiff is not subject to an arbitration agreement, the defendant need not raise a specific argument referring or relating to arbitration in the defendant's answer. *Id.* at ¶ 2. The court held that, in such circumstances, the defendant may raise an argument that relates to arbitration at the class-certification stage of the proceedings. *Id.* Accordingly, Citi need not mention arbitration in its answer and was not precluded from subsequently seeking to exclude individuals whose loan agreements contained an arbitration agreement. For all the foregoing reasons, the first to sixth assignments of error are overruled.

### Class Definition: Law of the Case

{¶ 40} Under the seventh assignment of error, Rimmer argues the class definition contains a plain, clerical error. She alleges that, as defined, the class was erroneously limited to those who *entered into* and paid off the loan agreement after March 8, 1999, resulting in a significantly reduced number of class members.

{¶ 41} In *Rimmer III*, this court set forth the class definition in paragraph ten of the opinion, which contained the phase "entered into a residential mortgage agreement," and the trial court adopted the definition in an order dated January 21, 2015. Rimmer did not appeal *Rimmer III* to the Supreme Court of Ohio, nor did she appeal the trial court's January 21, 2015 order to this court.

{¶ 42} Citi argues the trial court's January 21, 2015 order granting class certification is a final appealable order and, as such, Rimmer must appeal from it within 30 days. Citi is incorrect. While an order *denying* class certification is a final appealable order, *Lotfi-Fard v. First Fed. of Lakewood*, 8th Dist. Cuyahoga No. 87207, 2006-Ohio-3727, an order *granting* class certification is not a final appealable order. *Blumenthal v. Medina Supply Co.*, 100 Ohio App.3d 473, 654 N.E.2d 368 (8th Dist.1995). Therefore, we do not agree with Citi's contention that Rimmer failed to timely appeal the January 21, 2015 order and was therefore precluded from challenging the class definition set forth in that order.

{¶ 43} However, under the circumstances of this case, we find the law-of-the-case doctrine precluded Rimmer's claim. Under the doctrine, the decision of an appellate court in a prior appeal will be followed in a later appeal in the same case and court. *Nolan v. Nolan*, 11 Ohio St.3d 1, 4, 462 N.E.2d 410 (1984).

The law-of-the-case doctrine reflects a strong public policy to "'ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts.'" *Brothers v. Morrone-O'Keefe Dev. Co.*, 10th Dist. No. 06AP-713, 2007 Ohio 1942, ¶ 35, quoting *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 404, 1996 Ohio 174, 659 N.E.2d 781 (1996).

*HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 31, fn. 2.

{¶ 44} The first sentence of the class definition now disputed by Rimmer, which limits the class to those who *entered into* a mortgage agreement after March 8, 1999, was the same as the class definition stated in the trial court's March 11, 2013 order. On appeal from that order, Rimmer raised two issues regarding the trial court's class definition but did not challenge this aspect of the class definition. *Rimmer II.* Upon remand, the trial court's order of March 19, 2014, reflected the same phrase in the first sentence of the class definition. In *Rimmer III*, this court ordered the trial court to adopt a class definition that also contained the same phrase. Rimmer did not appeal our decision in *Rimmer III* to the Supreme Court of Ohio. The class definition this court ordered the trial court to adopt in *Rimmer III* was therefore the law of the case and is not reviewable by this panel. The seventh assignment of error lacks merit.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR